[Sac. No. 7274. In Bank. Aug. 3, 1961.]

THE GREYHOUND CORPORATION, Petitioner, v. SUPERIOR COURT OF MERCED COUNTY, Respondent; EARLINE Z. CLAY et al., Real Parties in Interest.

364

366

Carroll, Davis, Burdick & McDonough, Richard B. McDonough and J. D. Burdick, for Petitioner.

No appearance for Respondent.

T. N. Petersen for Real Parties in Interest.

PETERS, J.—In this proceeding an alternative writ of prohibition was granted for the purpose of reviewing an order of discovery made by respondent court in a pending action in which petitioner is the defendant and Earline Z. Clay and Leslie Randolph Clay (the real parties in interest) are the plaintiffs. The order was made pursuant to plaintiffs' motion for an order requiring defendant to produce and permit the inspection and copying or photographing of certain described documents. The motion was predicated upon section 2031 of the Code of Civil Procedure, which is a portion of the discovery act enacted in 1957 (Stats. 1957, chap. 1904). There are also pending five other cases involving various facets of the discovery act (*Carlson* v. *Superior Court*, L. A. No. 26111, *post*, p. 431 [15 Cal.Rptr. 132, 364 P.2d 308]; *West Pico Furniture Co. of Los Angeles* v. *Superior Court*, L. A. No. 26171, *post*, p. 407 [15 Cal.Rptr. 119, 364 P.2d 295]; *Steele* v. *Superior Court*, L. A. No. 26172, *post*, p. 402 [15 Cal.Rptr. 116, 364 P.2d 292]; *Filipoff* v. *Superior Court*, L. A. No. 26265, *post*, p. 443 [15 Cal.Rptr. 139, 364 P.2d 315]; *Cembrook* v. *Superior Court*, S. F. No. 20707, *post*, p. 423 [15 Cal. Rptr. 127, 364 P.2d 303]). Although each of the six cases presents its own particular issues, there are certain general contentions that are common to all. For convenience, we will discuss those general considerations in this opinion, thus preventing unnecessary repetition.

The general problems running through all of the cases are six in number. They can be listed as follows:

1. What discretion is vested in the trial court in discovery matters, and to what extent are the appellate courts bound by the exercise thereof?[1]

---

[1]Inherent in all of the cases is the question of whether an order granting or denying discovery is a proper subject of a prerogative writ. We

2. What showing is necessary to support an order granting discovery?

3. Need discoverable material be such as will be admissible in evidence at the trial of the action?

4. Are the discovery statutes unconstitutional because they permit unreasonable searches and seizures?

5. What is the nature and extent of the attorney-client privilege protected from discovery under the act?

6. To what extent, if any, should discovery be allowed when a party seeks material which is peculiarly the work product of his adversary or the adversary's attorney?

Before specific answers can be given to these questions the act must be examined in its entirety to ascertain, if possible, its general purpose and intent.

■ In the instant case, the order involved was entered pursuant to the provisions of subdivision (a) of section 2031 of the Code of Civil Procedure. It reads as follows:

"(a) Upon motion of any party showing good cause therefor, and upon at least 10 days' notice to all other parties, and subject to the provisions of subdivision (b) of Section 2019 of this code, the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by subdivision (b) of Section 2016 of this code and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the scope of the examination permitted by subdivision (b) of Section 2016 of this code. The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

have previously answered this question in the affirmative in *Singer* v. *Superior Court*, 54 Cal.2d 318 [5 Cal.Rptr. 697, 353 P.2d 305], and in *Dowell* v. *Superior Court*, 47 Cal.2d 483 [304 P.2d 1009]. See also *San Francisco Unified Sch. Dist.* v. *Superior Court*, 55 Cal.2d 451 [11 Cal. Rptr. 373, 359 P.2d 925], and *Chronicle Pub. Co.* v. *Superior Court*, 54 Cal.2d 548 [7 Cal.Rptr. 109, 354 P.2d 637].

Subdivision (b) of section 2016, incorporated by reference in the foregoing quotation, reads as follows:

"(b) Unless otherwise ordered by the court as provided by subdivision (b) or (d) of Section 2019 of this code, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party, or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure. This article shall not be construed to change the law of this State with respect to the existence of any privilege, whether provided for by statute or judicial decision, nor shall it be construed to incorporate by reference any judicial decisions on privilege of any other jurisdiction."

Subdivision (b)(1) of section 2019, also incorporated by reference in section 2031 via its inclusion in section 2016, reads as follows:

"(b)(1) After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated time or place other than stated in the notice, or that it shall not be taken except by allowing written interrogatories by one or more parties, or that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall be opened only by order of the court, or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoy-

ance, embarrassment, or oppression. In granting or refusing such order the court may impose upon either party or upon the witness the requirement to pay such costs and expenses, including attorney's fees, as the court may deem reasonable.''

These sections comprise the statutory provisions governing inspection of documents and other objects (both real and personal) in the possession or control of the adversary party litigant. By the enactment of such provisions the Legislature made certain changes in the rules existing under the predecessor statute (Code Civ. Proc., § 1000) which governed inspection prior to 1958. It also incorporated certain procedures, already adopted and tested in the federal courts and in the judicial system of several states. The fundamental purpose of those enactments was to expedite the trial of civil matters by allowing litigants an adequate means of discovery during the period of preparation for trial. (*Report of Committee on Administration of Justice of The State Bar of California*, reprinted in Journal of The State Bar of California, vol. 31, no. 3, pp. 204 et seq., and in 1 DeMeo, California Deposition and Discovery Practice, pp. 2 et seq.) To accomplish this purpose the Legislature not only enacted the three code sections above quoted, but also enacted an entire article providing for various discovery procedures. In order to interpret any one section it is necessary to consider the entire article. Only in this fashion can the general legislative intent be ascertained.

It should first be noted that the Legislature repealed the then existing statutes on discovery, and retained only such elements of the prior system as were re-enacted in the new article. The new system differs fundamentally from the old.

A summary of the new system, together with its more important changes, is as follows:

By section 2016 it was provided that a litigant might take the deposition of ''any person, including a party . . . for the purpose of discovery or for use as evidence in the action or for both purposes.'' This provision greatly enlarged the prior right to take depositions which, insofar as a nonparty witness was concerned, was limited to situations wherein the circumstances indicated a danger that the witness whose testimony was required would not be available at the time of trial (prior Code Civ. Proc., § 2021; see analysis in 15 Cal.Jur.2d 690). Thus, with the exception of the deposition of a party or his agent or employee, depositions previously were pro-

vided for the sole purpose of obtaining testimony to be used *at the trial.* The new rules specifically provide that the procedure be utilized also for the purpose of discovering facts, without any thought of producing those facts at trial.

▪ Subdivision (b) of the same section (quoted above) also enlarged upon the scope of the examination allowed, by providing that the deponent might be examined on any matter relevant to the subject matter involved in the action (as distinct from the previous rule that questions on deposition might be successfully objected to under those rules of evidence which prevail at trial; i.e., competency, materiality or relevancy to an *issue* involved in the trial).[2] The same language is incorporated by specific reference into the provisions for other types of discovery, including interrogatories, inspection of documents, etc.

▪ That the Legislature intended that a deponent could be asked questions beyond the scope of the questions to be allowed at trial is further indicated by the inclusion of subdivisions (d) and (e) of the section. These subdivisions provide for the use of the deposition at the trial, in which case either party may have excluded therefrom those portions which would be inadmissible if the witness were present and examined in person. In addition, subdivision (f) provides that a party does not make the deponent his own witness, either by taking the deposition or (under some circumstances) by offering it in evidence at the trial of the action. From the foregoing, it is clear that the Legislature intended that the new procedures should provide for discovery of facts during trial preparation, including facts in the possession of the adverse party and in the possession of independent witnesses, regardless of the ultimate right to present those facts at the trial.

▪ Section 2017 provides for the perpetuation of testimony by the taking of depositions when no action is pending. By the language of subdivision (a)(3), all provisions regarding scope of the examination and the various limitations and protections against abuse which control the other discovery procedures are made specifically applicable thereto.

▪ Sections 2018 through 2029 provide streamlined and less burdensome mechanics for the actual noticing and taking

---

[2] In specifying the scope of the examination, the Legislature specifically recognized the limitation against inquiry into privileged matter, and laid down certain rules regarding the determination of privilege, all of which will be discussed below in the appropriate portion of this opinion.

of depositions both in and out of the state, and upon either oral examination or written interrogatories.

■ One subdivision of section 2019 requires individual scrutiny, as it is made applicable, by reference, to the other discovery procedures contained in the article. Subdivision (b)(1), entitled "Orders for protection of parties and deponents" (and quoted in full, above) provides that upon motion of any party, *and for good cause shown,* the court in which the action is pending may control the scope of the inquiry, limit the matters included therein, and may make "any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." The inclusion of this subdivision, and its incorporation by reference in the other sections, indicate that the Legislature was aware of the fact that the new procedures provided discovery rights far beyond the narrow confines and limitations of the old and that the wide latitude authorized by the new sections required a method of controlling abuse which did not exist theretofore.

■ Section 2030 added a concept not previously existing in California. In summary, it provides that a party may, without previous court order, compel his adversary to fully answer in writing such written interrogatories as may be served upon him. The scope of the interrogatories is the same as that provided for depositions, and the party to whom the interrogatories are addressed is afforded the protection of the right to object and have his objection passed upon by the court. In such case, the provisions of subdivision (b)(1) of section 2019, *supra,* are made applicable. No limitation is made upon the number of interrogatories which may be included in the set, but a party may not require a particular adversary to answer more than one set without prior order of court. The use of such interrogatories is in addition to and exclusive of the right to take the deposition of the same party, and either procedure may be resorted to before or after the other.

■ Section 2031, as pointed out above, eliminated pre-existing section 1000 ("Inspection of Writings") and provided not only for the production, inspection and copying of writings, documents, photographs, etc., but for the inspection of physical objects (real and personal) not capable of being reduced to writing, and for the right to photograph the same. The right to inspect is not enjoyed (as is the right to require answers to interrogatories) without first obtaining an order

of court predicated upon a noticed motion and the showing of good cause. The scope of things which may be required to be produced, as well as the provisions for protection against abuse, was again made the same as the scope and limitations provided for in the case of depositions. Moreover, the section specifically provides that when ordering inspection the court may "prescribe such conditions as are just."

Section 2032 provides for physical, mental or blood examination of parties (and other specified persons) when the physical or mental condition, or blood relationship of such person is in controversy. Such examination may be had only on court order made on motion for good cause shown, and to that extent is similar to the right recognized by judicial decision prior to the enactment of the discovery procedures. The section, however, goes beyond the old procedure in that it provides for examination of some persons other than the parties, and also provides that the party requiring the examination must provide the examinee, on request, with "a detailed written report of the examining physician setting out his findings and conclusions, together with like reports of all earlier examinations of the same condition." If such request is made, the examining party shall be entitled to request and receive reports of examinations which the examinee caused to be made. There is also provision for the waiver of privilege connected with medical examinations.

Section 2033 adds another new procedure. Under its provisions either party may require (without first obtaining court order) that the other party admit "the genuineness of any relevant documents described in the request or . . . the truth of any relevant matters of fact set forth in the request." The party so served may reply by a sworn denial or by a detailed answer setting forth reasons why he cannot admit or deny. He may also file with the court objections to the requests, and obtain a hearing thereon. Failure to take any one of the enumerated steps within the times provided is deemed an admission. The section does not incorporate the provisions of 2016 regarding scope of the admissions, but by its language limits the requests to matters not privileged and relevant. The protections set forth in section 2019, subdivision (b)(1) are specifically made applicable to this section.

Section 2034 provides penalties which may be imposed by the court on any deponent or party who refuses to respond properly to any of the foregoing discovery procedures. Such penalties include an order requiring answer, payment of

reasonable expenses incurred, including attorney fees, contempt proceedings, judicial establishment of the fact against the interest of the refusing party, prohibition against the introduction of evidence, striking pleadings or portions thereof, stay of proceedings, dismissal of action, judgment against the defaulting party, as well as any order in regard to the refusal which is just.

Section 2035 defines the word "action" (in which the foregoing proceedings are applicable) as including a special proceeding of a civil nature.

The foregoing code sections, although substantially adopted from the federal rules of discovery, are not copied verbatim therefrom. Throughout the article the California Legislature made alterations. Most such changes were for the purpose of clarification, but there were some alterations in substance. The majority of these either extended the situations wherein a particular form of discovery might be used, or extended the persons to whom it might be applied. It is not necessary to list here the minutiae of such alterations in the California statutes, for that task (i.e., section by section comparison with the federal rules) was accomplished by The State Bar's Committee on Administration of Justice, the report of which was adopted by the Legislature (Journal of The State Bar of California, vol. 31, no. 3, pp. 204 et seq., *supra*, 1 DeMeo, California Deposition and Discovery Practice, *supra*). The importance of those alterations is that almost without exception they were made *for the express purpose of creating in California a system of discovery procedures less restrictive than those then employed in the federal courts.*[3]

Under the new statutes the Legislature adopted a complete system in which at least five methods of discovery were substituted for the three previously existing in this state. Each method was liberalized as to person, scope, and situation. The new system contemplated and created an interdependence of methods to the end that each might be utilized in support of the others. Care was taken to give to each party the rights given to his opponent. To protect against the abuses of the liberality thus created, safeguards were provided unknown to

---

[3]For a single example, see comparison of proposed (and subsequently adopted) section 2016 with federal rule 26, as reported in the above committee report at page 213 of the Journal. The committee recommended, and the Legislature accepted, far more liberality in the use of depositions than was provided in the federal system which represented, at that time, the most liberal system yet evolved.

the old California procedures. ▮▮▮ The new system, as was the federal system (Moore's Federal Practice, vol. 4, pp. 1014-1016), was intended to accomplish the following results: (1) to give greater assistance to the parties in ascertaining the truth and in checking and preventing perjury; (2) to provide an effective means of detecting and exposing false, fraudulent and sham claims and defenses; (3) to make available, in a simple, convenient and inexpensive way, facts which otherwise could not be proved except with great difficulty; (4) to educate the parties in advance of trial as to the real value of their claims and defenses, thereby encouraging settlements; (5) to expedite litigation; (6) to safeguard against surprise; (7) to prevent delay; (8) to simplify and narrow the issues; and, (9) to expedite and facilitate both preparation and trial.[4]

▮▮▮ Certainly, it can be said, that the Legislature intended to take the "game" element out of trial preparation while yet retaining the adversary nature of the trial itself. One of the principal purposes of discovery was to do away "with the sporting theory of litigation—namely, surprise at the trial." (*Chronicle Pub. Co.* v. *Superior Court, supra,* 54 Cal.2d 548, 561. See also page 572 of the same opinion wherein we adopted from *United States* v. *Proctor & Gamble Co.,* 356 U.S. 677 [78 S.Ct. 983, 2 L.Ed.2d 1077], the phrase that discovery tends to "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.") Modern legal authors, also, have accepted this view of the purpose of discovery procedures. In a recent issue the authors of Harvard Law Review have compiled an authoritative analysis, too exhaustive for quotation here (132 pages), but which supports the views expressed above (*Developments in the Law—Discovery* (1961) 74 Harv.L.Rev. 942).

While the discovery act was thus intended to take the "game" element out of trial preparation, it was not intended to adversely affect the general adversary nature of litigation under our system of law. As said by Professor

[4]Each of these purposes was generally expressed in the case of *Hickman* v. *Taylor,* 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451], which interpreted the federal rules of discovery in 1947, and of which the California Legislature is deemed to have been cognizant when adopting those rules. Similar concepts of the purposes of discovery were expressed in *Pettie* v. *Superior Court,* 178 Cal.App.2d 680, at p. 689 [3 Cal.Rptr. 267], and in *Caryl Richards, Inc.* v. *Superior Court,* 188 Cal. App.2d 300 [10 Cal.Rptr. 377].

David W. Louisell,[5] ". . . a law suit should be an intensive search for the truth, not a game to be determined in outcome by considerations of tactics and surprise. . . . [but there is] nothing in these rules at odds with the fundamentals of the common law method of adversary adjudication. There is nothing in these rules to suggest a retreat from the common law's hard-headed conception of litigation as *adversary* and *competitive,* and from its historic notion that a struggle—warfare, if you will—between vitally interested partisans, is most apt to expose the truth. . . . The Rules simply develop discovery, which has its antecedents in English chancery practice, into an efficient technique for fact ascertainment, to take its place in the common law's arsenal along with the advocate's other efficient weapons such as testimony in open court, cross-examination, impeachment, forensic skill, and mastery of legal principles. As stated by Mr. Justice Jackson in concurring in the decision of *Hickman* v. *Taylor* :

" '. . . [Counsel for plaintiff] bases his claim to [the conversations of defendants' counsel with witnesses] on the view that the Rules were to do away with the old situation where a law suit developed into "a battle of wits between counsel." But a common law trial is and always should be an adversary proceeding. Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.'

"The author believes, and a study tends to confirm, that the deposition-discovery rules do not minimize the value of true expertness and skill in advocacy. They do minimize the chances for and significance of the trick tactic, but contrariwise they enhance the value of thorough and penetrating advocacy." (*Discovery and Pre-Trial,* 36 Minn.L.Rev. 633, 639.)

 In order to accomplish the various legislative purposes set forth above, the several statutes must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes for denial. As we stated in the *Chronicle* case (*supra,* 54 Cal.2d at p. 572), "Only strong public policies weigh against disclosure."

There are several District Court of Appeal decisions also announcing this doctrine of liberal construction. "The Legis-

---

[5]Then Professor of Law, University of Minnesota; now Professor of Law, University of California, Berkeley; member, Minnesota, New York and District of Columbia Bars.

lature obviously considered the discovery procedures desirable and beneficial. Their action merits liberal construction of the act by the courts." (*Grover* v. *Superior Court,* 161 Cal. App.2d 644, 648 [327 P.2d 212].) "In determining whether or not there has been an abuse of discretion it should be borne in mind that the Discovery Act is to be liberally construed." (*Smith* v. *Superior Court,* 189 Cal.App.2d 6, 10 [11 Cal.Rptr. 165].) "The statute is to be liberally interpreted so that it may accomplish its purpose." (*Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d 300, 303.) See also *Rolf Homes, Inc.* v. *Superior Court,* 186 Cal. App.2d 876, 882 [9 Cal.Rptr. 142]; *Grand Lake Drive In* v. *Superior Court,* 179 Cal.App.2d 122, 129 [3 Cal.Rptr. 621]; *Pettie* v. *Superior Court, supra,* 178 Cal.App.2d 680, 689; *Clark* v. *Superior Court,* 177 Cal.App.2d 577, 580 [2 Cal. Rptr. 375]; and *Laddon* v. *Superior Court,* 167 Cal.App.2d 391, 395 [334 P.2d 638].

There are, however, quite a number of appellate court opinions that have adopted a strict rather than liberal attitude towards the discovery statutes. The result has been the filing of a large number of applications for writs to test such rulings. This, in itself, by arresting the trial while such writs are pending, militates against expeditious litigation. For the guidance of the trial courts the proper rule is declared to be not only one of liberal interpretation, but one that also recognizes that disclosure is a matter of right unless statutory or public policy considerations clearly prohibit it. Even in those instances wherein the statute requires a showing of good cause, that showing must be liberally construed.[6]

*Discretion of the trial court:*

In the instant case, as in the other cases decided this day, the party in whose favor the trial court has ruled urges that the ruling was within the "discretion" of the trial court. This concept requires some discussion.

 Undoubtedly the discovery statutes vest a wide discretion in the trial court in granting or denying discovery.

---

[6]Several District Court of Appeal opinions, which otherwise have reached proper results, contain language implying that a party who is required to show good cause will be denied disclosure if he fails to show a specific need for the requested information, or does not have a special or proprietary interest in the document sought to be inspected. (For example, see *Atchison, T. & S. F. Ry. Co.* v. *Superior Court,* 191 Cal. App.2d 489 [12 Cal.Rptr. 788].) Such tests go beyond the statutory intent of ''good cause,'' may often place the burden on the wrong party, and are disapproved.

The appellate courts in passing on orders granting or denying discovery should not use the trial court's discretion argument to defeat the liberal policies of the statute. The courts should be careful to impose the burden of showing discretion or a lack of it on the proper party. As already pointed out there are several situations where the litigant starts the discovery process without prior court intervention. The burden is then on the party seeking to deny that right.[6a] On the other hand, where the party must show "good cause"[7] for the disclosure, obviously the burden is on the one seeking disclosure.

There are several appellate court cases that have discussed the issue of discretion of the trial court. Their language in this respect correctly states the law. (See *Grover* v. *Superior Court, supra,* 161 Cal.App.2d 644, 649; *Heffron* v. *Los Angeles Transit Lines,* 170 Cal.App.2d 709, 713 [339 P.2d 567, 74 A.L.R.2d 526]; *Crummer* v. *Beeler,* 185 Cal.App.2d 851, 860 [8 Cal.Rptr. 698]; *Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d 300, 303-304; *Smith* v. *Superior Court, supra,* 189 Cal.App.2d 6, 10; *DeMayo* v. *Superior Court,* 189 Cal.App.2d 392, 394 [11 Cal.Rptr. 157].) But the problem is one that requires a more definite statement.

Some discretion is undoubtedly conferred on the trial courts. Section 2031 provides that the order requiring a party to produce documents and other things for inspection shall be based on a motion "showing good cause." Similarly, section 2032, relating to physical or mental examinations, requires that the order be based on "good cause." Discretion is obviously involved here. Moreover, each of the discovery procedures is subject to the provisions of section 2019, subdivision (b)(1), quoted above, which requires the trial court to make orders, by limiting the scope and manner of the discovery procedures, in certain specified manners. That section would be entirely without meaning if it were not construed to grant the court discretion in the matter of limiting attempted discovery which, while it may come within the rules established by the other code sections, offends the sense of justice and reason. For the same purpose section 2031 author-

---

[6a]An amendment to section 2030 (Stats. 1961, chap. 249) will change the burden in regard to interrogatories by allowing objection in lieu of answer, and granting the proponent the right to move the court for an order requiring further response.

[7]What constitutes "good cause" is discussed later in this opinion.

izes the court to prescribe conditions which shall apply to the production of things for inspection.

We have no doubt that the Legislature intended to bestow a fairly broad discretion upon the trial court in these matters. We agree with the general rules interpreting that discretion as announced in the several District Court of Appeal opinions cited above. Those decisions state the well-recognized rules concerning the limitation upon the power of the appellate courts to disturb an exercise of discretion by the trial court. They properly hold that such exercise may only be disturbed when it can be said that there has been an abuse of discretion. The difficulty is that not all of these cases agree as to what specific act or omission constitutes an abuse of discretion under the discovery statutes.

For example, in the *Heffron* case (*supra,* 170 Cal. App.2d 709) it was properly pointed out that it is not an abuse of discretion to deny discovery when the party seeking the information had been so dilatory that allowance of discovery would hinder rather than expedite the trial. Both in *Singer* v. *Superior Court* (*supra,* 54 Cal.2d 318), and in the *Chronicle* case (*supra,* 54 Cal.2d 548), it was noted that the trial court is granted great discretion in making its orders under the provisions of section 2019, subdivision (b)(1), for the protection of parties and witnesses from embarrassment and oppression. The inference to be drawn from these decisions is that the court should, where possible, utilize its power to make such order as "justice requires." This does not mean that disclosure must be denied in every case in which annoyance or oppression may be demonstrated. Rather, it means that the trial court should attempt to arrive at a just result by the application of its powers to make such order as justice requires. In those situations wherein the only valid objection to disclosure is that it entails an undue burden on the other party, the trial court should give consideration to various alternatives provided in the statute. Requiring such party to pay the costs of disclosure is not the only such method. In many instances justice might be served by approving such portion of the request which appears to the court to be of sufficient importance to override the considerations of burden, while disapproving such portions which do not.

There are other situations in which too little consideration is given to a proper exercise of the wide discretion of the trial court. One such is exemplified by those cases in which technical objection is made that the party seeking discovery has pro-

ceeded under one discovery statute when another provides the proper vehicle. For example, the case of *Rust* v. *Roberts,* 171 Cal.App.2d 772 [341 P.2d 46], arose out of a condemnation action in which the only issue was the value of the land sought to be taken by the state. The landowner sought disclosure of various facts by interrogatories served under the provisions of section 2030. The trial court sustained objections to all of the interrogatories, and on proceedings in mandamus, the District Court of Appeal sustained the trial court except in regard to one interrogatory, only. The reasons given by the appellate court are now unimportant. The case is cited at this point to indicate that in regard to several of the interrogatories the District Court of Appeal overlooked the fact that, regardless of the technical objection which it sustained, the information was clearly discoverable under one or more discovery statutes other than section 2030. An interrogatory seeking the exact acreage of the land (which was described in the complaint by metes and bounds) was found improper because defendant, who owned the land, was deemed to be familiar with the total acreage thereof. The court obviously overlooked the fact that total acreage, if not admitted, would be a triable issue, and hence discoverable by a demand for an admission of fact under the provisions of section 2033. Similarly, the court disallowed an interrogatory seeking the names and addresses of the state's appraisers, together with their reports. Regardless of the discoverability of the appraisers' reports, their names and addresses were clearly discoverable by deposition, and should have been discoverable by interrogatory. Certain interrogatories seeking the state's contentions as to the highest and best use of the land were held to be improper. Even if the state's contention as to use be deemed as nondiscoverable (which premise is questionable) there can be no doubt that plaintiff would have been entitled to an answer to a series of demands for admissions that each of several hypothetical uses was the highest and best use. Thus, in the *Rust* case the decisions of the trial court and of the District Court of Appeal combined to stultify the purposes of discovery. They not only suppressed the effort to obtain information, but they required a delay while plaintiff sought a writ of mandate, as well as a further delay in order that plaintiff might commence new discovery proceedings for the sole purpose of obtaining information to which he would have been entitled had he originally proceeded under a different section.

A proper exercise of discretion by the trial court would have obviated such a situation. If the trial court felt that the objections to the interrogatories, as such, were proper it could have made use of the power granted to it to make such order as justice requires, thereby sustaining the objections only on condition that the state volunteer such portion of the requested information as would be obtainable in another form.

We cannot suggest even a small percentage of the particular situations which might develop wherein the lower courts may utilize discretion to reach the result intended by the Legislature. The examples we have cited underscore the point that in discovery proceedings discretion is not exercised (as several District Courts of Appeal imply) merely by denying or granting the request. To predicate appellate review on the hypothesis that such an exercise of discretion may not be disturbed, is to overlook the purpose of the discovery statutes. If discovery is to serve its intended purpose, the manner of exercising discretion must be given greater consideration at both the trial and appellate level. Certainly, in some cases, consideration should be given to the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections urged by the party resisting disclosure, and ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances. With such considerations in mind, the court may grant the request in full or in part. It may grant subject to specified limitations which it finds proper to impose. And it may, when necessary, deny *in toto*. These powers are implicit in the provisions of section 2019.[8] Were it not that the Legislature desired that discovery be allowed whenever consistent with justice and public policy, it would not have enacted that provision.

It would be comforting were it possible to announce a definitive set of rules which would guide all concerned in the future determination of what is or is not an abuse of discretion in the denial, limitation or granting of discovery. It is apparent, however, that each exercise of discretion will occur under a differing set of facts, and that each case must, of necessity, be

<hr>

[8] For an exhaustive analysis of the power of the trial court to protect against the possible abuse of discovery procedures, see Louisell, *Discovery Today*, (1957) 45 Cal.L.Rev. 486, 512.

decided in light of those particular facts. But it is possible to lay down certain general rules based upon the nature and purpose of the discovery statutes which can be used in determining the proper exercise of discretion in all discovery cases. To constitute a proper exercise of discretion, the factual determination of the trial court should clearly and unequivocally be based upon the following legal concepts:

1. The legislative purposes above set forth are not to be subverted under the guise of the exercise of discretion;

2. Those purposes are to be given effect rather than thwarted, to the end that discovery is encouraged;

3. When disputed facts provide a basis for the exercise of discretion, those facts should be liberally construed in favor of discovery, rather than in the most limited and restrictive manner possible;

4. Although the statutory limitations on discovery must be applied when the facts so warrant, exercise of discretion does not authorize extension thereof beyond the limits expressed by the Legislature;[9]

5. There is no room for judicial discretion in those situations not included in the statutes but asserted as general limitations on the privileges conferred.[10] Such situations, however, may be subject to judicial discretion under the statutory power to prevent abuse and advance the ends of justice;

6. The power to prevent abuse which is bestowed on the trial court by the provisions of section 2019, subdivision (b)(1), is the power to exercise discretion based upon the factual showing made. When the record indicates facts on which the court exercised its discretion, that exercise will not be disturbed on appeal; when the facts are undisputed, or there is but one reasonable interpretation thereof, the question ceases to be fact, and is one of law;

7. The trial courts in exercising their discretion should keep in mind that the Legislature has suggested that, where possible, the courts should impose partial limitations rather than outright denial of discovery;

8. In the exercise of its discretion the court should

---

[9]For an example of the trial court's unwarranted attempt to extend the statutory limitation on privilege, see *San Francisco Unified Sch. Dist.* v. *Superior Court, supra,* 55 Cal.2d 451.

[10]Examples: claim that the moving party is engaging in a ''fishing expedition,'' or that privilege extends beyond the statutory definition thereof, or that the material sought is subject to an objection which is only applicable to time of trial, all discussed later.

weigh the relative importance of the information sought against the hardship which its production might entail, and it must weigh the relative ability of the parties to obtain the information before requiring the adversary to bear the burden or cost of production, keeping in mind the statutory admonition of entering an order consistent with justice.

Any record which indicates a failure to give adequate consideration to these concepts is subject to the attack of abuse of discretion, regardless of the fact that the order shows no such abuse on its face. A difficulty arises, however, when the record is devoid of any clue as to the reasoning of the trial court. There is nothing in the discovery statutes which requires the trial court to make findings as a basis of an order either granting or refusing the right to have information disclosed. In many instances which have come to our attention the trial court has filed a memorandum opinion which adequately serves this purpose. In other instances the order includes certain sanctions which, of themselves, indicate the reasoning behind the exercise of discretion. More often the appellate court has been faced with a bare order which includes no suggestion of the reasoning behind it. While there is no requirement that the trial court make such a record, and admittedly such is not always necessary to a review, a careful trial judge, faced with a questionable request for discovery, will find some way to let the record show the basis of his determination.

There is another factor connected with this discussion of discretion that should be mentioned. Throughout the cases decided this day appears the objection that the requested discovery is a mere "fishing expedition." This is a concept constantly referred to in the legal literature on the subject. Apparently the phrase is intended to mean that the party seeking discovery does not know precisely what he seeks, but is attempting to obtain all possible information for the purposes of his case. This is no basis for holding, *per se,* that the request is improper. Inasmuch as discovery of all relevant material during the time of preparation is the aim of the statute, and since the statute intends that each party shall divulge, within limits, the information in his possession, there is nothing improper about a fishing expedition, *per se.* The method of "fishing" may be, in a particular case, entirely improper (i.e., insufficient identification of the requested information to acquaint the other party with the nature of information desired, attempt to place the burden

and cost of supplying information equally available to both solely upon the adversary, placing more burden upon the adversary than the value of the information warrants, etc.). Such improper methods of ''fishing'' may be (and should be) controlled by the trial court under the powers granted to it by the statute. But the possibility that it may be abused is not of itself an indictment of the fishing expedition *per se.*

There can be no question but that the Legislature had before it, when adopting the discovery statutes, all of the arguments against discovery predicated on the theory that a fishing expedition is improper. The report of The State Bar, referred to above, pointed out that the then existing discovery provisions were too restrictive, and specifically made mention of the fact that various judicial decisions interpreting those statutes had attempted to hinder discovery on the alleged ground that it was a mere fishing expedition. Particularly, the report included reference to the concurring opinion in *MacLeod* v. *Superior Court,* 115 Cal.App.2d 180, 185 [251 P.2d 728], wherein it was said: ''The statute, as written [referring to presuit discovery by deposition], permits a proceeding brought for the sole purpose of annoying, harassing or embarrassing another, or for some ulterior object. *It permits one who does not have a cause of action to indulge in a meddlesome fishing expedition.* . . . It should not be permitted. But the remedy lies in the field of legislation. . . .'' (Emphasis added.)

The Legislature has now acted. It has authorized the fishing expedition which the opinion castigated. It did so with the full knowledge that the federal procedure which it was adopting had already been interpreted by the United States Supreme Court as authorizing fishing expeditions. In *Hickman* v. *Taylor, supra* (1947), 329 U.S. 495, 501, 507, that court had said: ''The various instruments of discovery now serve (1) as a device . . . to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial. . . . *No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.* [Here, by footnote, the

opinion points out that a valid argument against the objection to fishing expeditions is the mutuality of the procedure whereby a party who must disclose his case to the "fisher" may also require his opponent to do likewise.] Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure . . . [reduces] the possibility of surprise." (Emphasis added.)

Although the *Hickman* case is not binding upon us, its reasoning is sound. It follows that the claim that a party is engaged upon a fishing expedition is not, and under no circumstances can be, a valid objection to an otherwise proper attempt to utilize the provisions of the discovery statutes. Should the so-called fishing expedition be subject to other objections, it can be controlled as indicated hereinabove.

With these general observations we now turn to a discussion of the specific issues raised by the parties.

The particular facts of the instant case are as follows:

Plaintiffs filed an action for damages for personal injuries alleged to have been received in an accident involving the motor vehicle in which plaintiffs were riding and a bus operated by defendant. The highway on which the accident occurred (U.S. 99) carries interstate as well as intrastate traffic, and the bus which was involved in the accident is alleged to have been carrying interstate passengers. While plaintiffs were yet at the scene, awaiting removal to the hospital, at least one witness to the accident, whose name and address plaintiffs do not have, but whom they believe to reside out of the State of California, stated facts to plaintiffs indicating the liability of defendant for the occurrence of the accident. At the same time and place, and before plaintiffs were removed to the hospital, adjusters and investigators in the employ of defendant arrived at the scene and obtained written and signed statements from various witnesses, including the bus passengers and other persons who were then using the highway. These investigators then followed plaintiffs to the hospital where they obtained statements from them. Plaintiffs did not obtain legal representation until the following day, and did not file suit until some time thereafter. Defendant's attorney was not retained in the matter until after suit was filed. In order to discover the names and addresses of possible witnesses, plaintiffs' attorney retained a detective agency and placed an

advertisement in the local daily newspaper, all to no avail. He then filed the motion referred to above, seeking an order requiring defendant to produce and to permit inspection and copy of the written statements of all witnesses.[11] In opposition to the motion defendant contended that the statements of the independent witnesses (as distinct from plaintiffs' statements) were not subject to discovery, although it conceded that plaintiffs were entitled to (and have since been furnished with) the names and addresses of such witnesses, many of whom reside out of the state and at great distances from the forum. In support of its contention, defendant filed the affidavit of its attorney alleging, among other things, that upon learning of the accident defendant caused an investigation to be made and written statements of the witnesses to be obtained "for the sole purpose of acquiring information regarding said accident to be transmitted to its attorneys . . . in preparing to defend against any claims arising out of the accident," and that thereupon all of the results of such investigation were transmitted to defendant's attorneys, in confidence, for such purpose.[12] The matter was submitted to the respondent court which entered its order requiring defendant to supply plaintiffs with the written statements of all the witnesses. In order to prohibit the enforcement of that order, defendant brought this proceeding.

In support of its application for a writ defendant contends that plaintiffs' motion for inspection should have been denied because: (1) there was not a sufficient showing;[13] (2) the statements of the independent witnesses are exempt from discovery by reason of privilege; and (3) they are further exempt by reason of being the work product of the litigant or its attorney. Other issues are inherent in these stated issues, and have been stated above. We turn to a discussion of these issues.

[11]Plaintiffs also sought discovery of various other matters which have been disposed of by stipulation.

[12]Plaintiffs do not raise any question concerning the fact that the affidavit is obviously hearsay, but they do point out that the attorney to whom the reports were subsequently transmitted was not defendant's attorney on the date that the statements of witnesses were obtained by defendant's agents.

[13]In addition to other claims of insufficiency of the showing, defendant points out that plaintiffs' affidavit in support of its motion in the respondent court did not include any reference to the attempts made by them to obtain the names of the witnesses, and that they first presented those facts by allegations in their verified return herein. The question of the timeliness of that showing will be discussed at the appropriate point below.

*Sufficiency of the showing:*

Petitioner contends that the order of respondent court was made without a sufficient showing of good cause. Such an order would be beyond the jurisdiction of the court if no cause were shown because the language of section 2031 clearly requires such a showing as the basis of any order for inspection. Subdivision (a) thereof, quoted in full above, provides that "[u]pon motion of any party showing good cause therefor" the court may order the production, inspection or copying of any specified document. Petitioner argues at great length that good cause was not shown in the instant case.

The code section is silent on both the *nature* of good cause and the *manner* in which it is to be shown. This being so, the legislative intent can be ascertained only by a consideration of the general legislative intent, already discussed.

The discovery act, as already pointed out, authorizes some vehicles of discovery (depositions, interrogatories and requests for admission) as a matter of right and without prior court order. Only in the cases of production of material for inspection and physical examination does the statute specifically provide that a prior order be obtained, based on a showing of good cause. It thus appears that the Legislature deemed the two latter vehicles to be of a type which might be abused if not controlled in advance. It follows that the good cause which must be shown should be such that will satisfy an impartial tribunal that the request may be granted without abuse of the inherent rights of the adversary. There is no requirement, or necessity, for a further showing. There is nothing in the entire act, other than protection against possible abuse, which indicates that the Legislature has differentiated between the inherent right to one method of discovery and another. The very incorporation, by reference, of various provisions of several sections into the others (scope of examination as defined in § 2016, subd. (b) ; orders for protection of parties as set forth in § 2019, subd. (b)(1) ; sanctions on refusal to make discovery as provided in § 2034) indicates a legislative intent that the right to each of the various vehicles of discovery, and the basis for the use of each, is inherently the same.

Petitioner also urges impropriety in the *manner* in which the cause for inspection was shown herein. It appears that plaintiffs filed their motion for inspection simultaneously with their complaint, and without supporting affidavits. However, affidavits were served and filed prior to the date of the hearing

of the motion. Those affidavits, identified the documents desired, showed them to be in the possession of petitioner, and showed plaintiffs' need for inspection. They did not include the allegations of the facts (set forth above) that plaintiffs had diligently attempted to obtain the information from other sources, and were frustrated in such attempt. There being no record, there is no way of knowing whether those facts were presented to the trial court orally, or at all. We do know that plaintiffs (as the real parties at interest herein) alleged these facts in full in their verified reply to the petition in this court. Furthermore, at oral argument petitioner admitted these facts to be true, but nevertheless contends that the showing before the trial court was fatally defective.

There is no merit to this contention. ▇▇▇ Since the statute does not prescribe the method of showing good cause, such may be shown in any manner consistent with the established rules of pleading and practice. ▇▇▇ Ordinarily, when a motion is filed seeking an order of court, the moving party serves and files supporting affidavits. Such was done herein prior to the date of hearing. Often the showing made therein is complete; sometimes it is not. In such instances (and even when no such supporting affidavits are filed) good cause may be found in the pleadings theretofore filed in the action. Often the cause for granting the motion is shown orally at the time of hearing, either by testimony or by argument of admitted facts. The latter method may be quite adequate insofar as the trial court is concerned (although it provides little record if the ensuing order is to be reviewed). ▇▇▇ Since the trial court must pass upon the cause shown, it is obvious that good cause should be shown at the time of making the motion or before. But if it is shown at any time before that court loses jurisdiction, it would be futile to disturb a proper exercise of discretion just because the court acted prematurely. To do so would be contrary to what has been previously said regarding the purpose of the discovery statutes. Evidently the respondent court here felt that the showing was sufficient, even in the absence of any claim that plaintiffs had attempted, and failed, to procure the information from other sources. ▇▇▇ The facts that the scene of the accident was an interstate highway, that petitioner obtained the witnesses' statements at the time of the accident, and while plaintiffs were physically incapacitated, as well as the other surrounding circumstances, were all before respond-

ent court. This would seem to support the implied finding of good cause. But, even if we were to hold such showing was insufficient, it now appears that additional facts, not presented to the trial court (but admittedly supporting the right to inspect) are true. Were it to be held that the failure to present those facts to the trial court requires us to grant the writ sought herein, needless litigation would result. This is so because although we would thereby prohibit the trial court from enforcing its order for inspection, nothing would prohibit plaintiffs from making a new motion, in support of which they would produce all of the facts which were first produced, together with those that have been presented since, and admitted to be true. Thereupon the respondent court would make a new order granting inspection, which order would not be subject to the present claim. Such procedure would not promote the efficient and expeditious disposition of this litigation.

 Inherent in the claim that there was an insufficient showing of good cause (in this proceeding, as well as in the other discovery matters now before us), is the contention that no material is discoverable under the statute unless it is shown to be relevant to the issues in the case.[14] Such contention is not new. It has been considered and found untenable by this court and by several District Courts of Appeal. In *Chronicle Pub. Co.* v. *Superior Court, supra,* 54 Cal.2d 548, this court approved the language of *Pettie* v. *Superior Court, supra,* 178 Cal.App.2d 680, where it was pointed out that the statute (subd. (b) of § 2016) expressly provides that discovery may be had as to any matter which is relevant to the *subject matter* involved in the pending action. The *Pettie* opinion then points out the wide divergence between the "subject matter of" and the "issues in" such action. Holding that relevancy to the subject matter is a broader concept than relevancy to the issues, it concludes that if the legislative intent had been to limit discovery to those matters which were relevant only to the issues, the Legislature would have so stated. The same concept was stated in *Rolf Homes, Inc.* v. *Superior Court, supra,* 186 Cal.App.2d 876, 881, and to some extent in *Laddon* v. *Superior Court, supra,* 167 Cal.App.

[14]The argument is based in part on the decision in *Twin Lock, Inc.* v. *Superior Court,* 171 Cal.App.2d 236 [340 P.2d 748], which held that the rules regarding discovery prior to the enactment of the 1957 discovery statutes were still applicable, and that the Legislature was without constitutional power to change them. For reasons set forth below, the *Twin Lock* decision should be overruled.

391, wherein (at p. 395) the court expressed the view that relevancy as applied to pretrial examination (discovery) is more loosely construed than it is when applied at the trial.

 Without any showing of what the statements of the witnesses might include, the trial court was justified in finding that those statements, obtained at the scene of the accident, were the factual accounts of eye witnesses, and hence relevant to the subject matter of the pending action. We conclude that the plaintiffs in the original action made a sufficient showing of good cause to support the order of respondent court.

*Admissibility of the evidence*:

 An objection made in the instant case and running through most of the other cases now pending, is that the material sought to be disclosed would be inadmissible at the trial of the action and is therefore not discoverable. The claim runs contra to an express provision of the discovery act. Subdivision (b) of section 2016 defines the scope of examination allowable in the taking of depositions, and its provisions are incorporated, either by express reference or by implication, in each of the sections providing for the remainder of the vehicles of pretrial discovery. Included therein is the provision that "It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." In spite of this language several opinions of the District Court of Appeal have held that such language is an invalid part of the statute.[15] These cases are wrong and should be disapproved insofar as they hold that the material sought (be it by deposition, interrogatory, inspection, demand for admission or examination) is not subject to the discovery statutes because the same material would be inadmissible at the trial of the action. The provision quoted above leaves no doubt of the legislative intent. Insofar as the material sought is in aid of any one or more of the many purposes of the discovery statutes, it makes little difference that such material is inadmissible *per se*. (*Chronicle Pub. Co.* v. *Superior Court, supra,* 54 Cal.2d 548, 560; *Pettie* v. *Superior Court, supra,* 178 Cal.App.2d 680.) The cases last cited also point out the desirability of allowing discovery of material which may not be admissible on direct examination, but which will be admissible on cross-examination.

---

[15]Principally, the *Twin Lock* decision and cases which have relied thereon. See fn. 14, *supra.*

 Of course, while the mere inadmissibility of the material is not, of itself, a bar to discovery, it is possible that the trial court, in the exercise of its discretion, may find such inadmissibility to be a factor which should be weighed in determining a claim of undue burden. It may be that the inadmissibility of the material indicates that the advantage to be gained from disclosure is outweighed by the burden which disclosure will entail. In such event the trial court may make such protective order as may be consistent with justice.

 In several of the cases now pending before us the claim of inadmissibility is also predicated upon the alleged incompetency of the testimony, rather than upon its irrelevancy or immateriality. Such incompetency is alleged in terms that normally are used to attack the admissibility of evidence at the time of trial (e.g., hearsay, assuming facts not in evidence, opinion and conclusion, etc.), including those usually addressed to the form of the question. Inasmuch as the Legislature has intentionally provided that the inadmissibility at the trial is not, of itself, a bar to disclosure on pretrial discovery, none of these objections to disclosure are sound. It should be noted that the Legislature has carefully provided a method whereby inadmissible material allowed on discovery may be prevented from reaching the ear or eye of the fact finder at the time of trial. Subdivision (d) of section 2016 (expressly incorporated in § 2030, and by implication in § 2031) provides that at the time of trial only so much of the disclosed material as may be "admissible under the rules of evidence" is to be used by the parties.[16]

 In all cases where inadmissibility for whatever reason is urged as a bar to discovery, it is the duty of the trial courts to consider such contention in the light of all of the facts, including both the purposes of the discovery act and

---

[16]What is here said in regard to competency is not applicable to questions propounded on deposition. Depositions are governed by subdivision (c) of section 2016 which provides that examination shall "proceed as permitted at the trial. . . ." The fact that this provision was not incorporated into the sections dealing with other forms of discovery indicates that the Legislature recognized a distinction between oral examination and other forms of discovery. In the former, the witness requires the protection afforded by those rules which prohibit questions which cannot be answered without admission of facts assumed therein, or which require lengthy explanation, or which cannot be readily understood. Such protection is not necessary in the other forms of discovery in which the party is not confronted by the requirement of immediate answer, and is entitled to the aid of counsel in framing an explanatory reply.

the purposes which disclosure of the objectionable material might serve. ▮▮▮ It is as equally improper to blindly grant disclosure of incompetent material as it is to deny the same merely because the material may be inadmissible at the time of trial. ▮▮▮ For example, the opinion and conclusion of a witness or party may serve no useful purpose whatsoever, or it may be a prime source of other factual and competent evidence. The same is true of hearsay. When the only objection urged is such type of incompetency, and no other factor is present, it would be improper to deny the right to disclosure. But when such objection is urged in connection with burden, oppression, or other matters going to the justice and equity of the situation, it is incumbent on the trial court to weigh all such factors. No hard and fast rule can be made. ▮▮▮ Only when the court has before it the "subject matter of the pending action," together with facts from which it can determine the need for disclosure, the ability of the respective parties to obtain the information, and the hardship which may be entailed by an order granting or denying, can it make an order which will be consistent with justice and the purposes of the discovery act.

In the instant proceeding it is far from clear that the statements sought to be inspected are inadmissible. But even if they were, such fact would not bar their disclosure under the considerations set forth above. This is particularly true in light of the fact that respondent court had sufficient information on which to base its order requiring disclosure.

*Unreasonable search and seizure:*

▮▮▮ Petitioner next argues that the Legislature was without constitutional power to enact a statute which provides that a party or witness must disclose material without reference to its admissibility. The argument is based upon the rule announced in *Twin Lock, Inc.* v. *Superior Court, supra,* 171 Cal.App.2d 236. There the court reasoned that in spite of the express provision of section 2031, the right to the production and inspection of documents is not as broad as the right to examine a party under the provisions of section 2016.[17] It based this conclusion upon a review of several Supreme Court cases (particularly *McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386 [159 P.2d 944]) which had interpreted the right

---

[17]Both sections 2030 (interrogatories) and 2031 (inspection of documents) expressly provide that the scope of inquiry thereunder shall be the same as the scope of inquiry permitted by section 2016 (depositions).

to inspect documents as such right existed under section 1000 of the Code of Civil Procedure (since repealed by the discovery act). The *Twin Lock* case relied upon and quoted the following language used in *McClatchy* (26 Cal.2d 386, at p. 396) : ''The right to have an inspection of papers and documents in the hands of a party to the action or a third person is governed by different rules from those applying to depositions. A party or witness has a constitutional right to be free from unreasonable searches and seizures, and it is therefore incumbent upon the one seeking an inspection to show clearly that he has a right thereto and that the constitutional guaranties will not be infringed.'' Based upon that quotation, the court in *Twin Lock* concluded that any deviation from the rules previously announced for the protection of parties under the old section 1000 constituted an unreasonable search, and that the Legislature was powerless to provide any method not consistent with those rules. Such reasoning is unsound. At the time of *McClatchy,* inspection was governed by the provisions of section 1000, and depositions by the provisions of sections 2020 et seq., all since repealed. Those sections did not spell out, as does the present discovery act, the various procedures which protect the parties from the unfairness of an unreasonable inspection. It was therefore necessary for the courts to apply rules which would guarantee such constitutional protection. The present statutes, however, provide that an order requiring a party to submit to inspection of material in his possession or control may only be made for good cause, shown on motion heard after notice to such party. It is further provided that in making such order the court shall exercise a wide discretion in the application of any number of procedures intended to protect the parties against abuse, oppression or any other alleged injustice. Thus, the statute has adequately provided for protection against the *unreasonableness* of the search or seizure. The California Constitution only prohibits ''unreasonable'' seizures.[18] Reasonable searches are permitted. One such ''reasonable'' search is by means of a search warrant. But just as search warrants are justifiable on the showing of good cause (and the provision of other protective procedures), so an order for the inspection of material in a civil case is reasonable when similar provision

---

[18]Article I, section 19, of the California Constitution provides in part: ''The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, shall not be violated. . . .''

is made. ▇▇▇▇ The *Twin Lock* decision is in conflict with the specific legislative enactment, is wrong, and is for those reasons, overruled.

*The attorney-client privilege*:

Petitioner further contends that it may not be compelled to produce the statements of the independent witnesses for the reason that such statements come within the attorney-client privilege. It no longer contends that such privilege extends to the names and addresses of such witnesses because, as has been noted above, it has already delivered a list of the names and addresses of such witnesses to plaintiffs.

The privilege contention is based upon the fact (alleged in the affidavit of its attorney filed in opposition to the motion for inspection) that upon learning of the accident petitioner caused an investigation to be initiated for the sole purpose of acquiring information to be transmitted to its attorneys (unnamed), that such information was to be used by said attorneys in preparing a defense to any claims arising out of the accident, and that the statements of the witnesses (together with all other information thus obtained) were so transmitted and are in the possession of petitioner's attorneys for such purpose. It has already been noted that petitioner's counsel was not retained until after the statements were secured. This, of course, casts some doubt on the credibility of the affidavit. However, accepting the affidavit at face value, it is our opinion that the statements of these witnesses were not privileged.

▇▇▇▇ Section 2031 expressly limits inspection to matters that are not privileged. In addition, it extends the scope of inspection to that expressed in subdivision (b) of section 2016. That section, after providing an extremely wide scope of examination, concludes with the following language:

"All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure. This article shall not be construed to change the law of this State with respect to the existence of any privilege, whether provided for by statute or judicial decision, nor shall it be construed to incorporate by reference any judicial decisions on privilege of any other jurisdiction."

▇▇▇▇ By this provision it is clear that the Legislature intended to express three distinct concepts not found in the earlier law of discovery. These are: (1) nothing contained in the new act should be deemed to change the statutory rules of

privilege as set forth in section 1881 of the Code of Civil Procedure, which rules were made applicable to discovery; (2) the adoption of the act should not be deemed to alter the effect of any existing judicial decision of this state interpreting or defining privilege; (3) the adoption of the act should not be deemed to be a legislative acceptance of the judicial interpretations of privilege in any other jurisdiction having similar discovery provisions. In other words, the Legislature expressly waived all implication that it was familiar with and adopted the judicial decisions of other jurisdictions, and provided that the passage of the act should have no effect, one way or the other, on California decisions interpreting privilege. Thus, the question here presented is whether the attorney-client privilege, as the same is delineated by California statute and case law (without reference to the discovery act, and not as such act has been interpreted in other jurisdictions) extends to the statements of independent witnesses obtained by a party for the purpose of preparing a defense against possible claims.

The attorney-client privilege is one of several statutory privileges provided for by section 1881 of the Code of Civil Procedure. Subdivision 2 thereof provides:

''An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity.''

The purpose of this privilege is to encourage the client to make complete disclosure to his attorney without fear that others may be informed (*City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418]; *Holm* v. *Superior Court,* 42 Cal.2d 500, 506 [267 P.2d 1025, 268 P.2d 722]). It has been held that it is still the client's communication to the attorney even when it is given to an agent for transmission to the attorney, and it is immaterial whether the transmitter is the agent of the client, the attorney, or both (*San Francisco Unified Sch. Dist.* v. *Superior Court, supra,* 55 Cal.2d 451, citing *City & County of San Francisco* v. *Superior Court, supra*). But, because the privilege tends to suppress otherwise relevant facts, it is to be strictly construed (*City & County of San Francisco* v. *Superior Court, supra,* at p. 234; *Grover* v. *Superior Court,*

*supra,* 161 Cal.App.2d 644, 646; *City & County of San Francisco* v. *Superior Court,* 161 Cal.App.2d 653 [327 P.2d 195]; *Grand Lake Drive In* v. *Superior Court, supra,* 179 Cal.App. 2d 122, 128). ■■■ Based on this well-settled rule of construction it has been held that what an attorney observes and hears from his client is not necessarily privileged (*Grand Lake Drive In* v. *Superior Court, supra*), and that nonprivileged matter which comes into the attorney's possession via a privileged document may be subject to disclosure even though the entire document is not (*idem; Unger* v. *Los Angeles Transit Lines,* 180 Cal.App.2d 172 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71]).

■■■ Moreover a party may not silence a witness by having him reveal his knowledge to the litigant's attorney (*City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 238). ■■■ In the *Grand Lake* opinion (*supra,* at p. 127) this proposition was stated as follows: "Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney. [Citation.] ■■■ Obviously, a client may be examined on deposition or at trial as to the facts of the case, whether or not he has communicated them to his attorney. [Citation.] ■■■ While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney." ■■■ This court approved and adopted this language in *San Francisco Unified Sch. Dist.* (*supra,* 55 Cal.2d 451) in which it was said, at page 457: "We hold that the forwarding to counsel of nonprivileged records, in the guise of reports, will not create a privilege with respect to such records and their contents where none existed theretofore."

■■■ These rules clearly demonstrate that the petitioner's action of gathering and transmitting the witnesses' statements to its attorney did not create an attorney-client privilege unless such privilege existed, *ab initio.* ■■■ That no privilege attached to those statements *ab initio* is demonstrated by the often-repeated proposition that the privilege created by subdivision 2 of section 1881 does not attach to matters communicated in the absence of a professional relationship or not intended to be confidential (*City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 234-235; *Grand Lake Drive In* v. *Superior Court, supra,* 179 Cal.App.2d 122, 125-126; *Clark* v. *Superior Court, supra,* 177 Cal.App.2d 577, 580; *Price* v. *Superior Court,* 161 Cal.App.2d 650, 652 [327 P.2d 203]). ■■■ The witnesses, whose statements petitioner has

been ordered to disclose for inspection, did not intend their remarks to be confidential, and they were not in any sense parties to an attorney-client relationship. To attach privilege to the facts and matters which they voluntarily divulged to petitioner's investigators would run contra to the rule expressed in *Chronicle Pub. Co.* v. *Superior Court, supra,* 54 Cal.2d 548, at p. 565: " '. . . no new or common law privilege can be recognized in the absence of express statutory provision. . . .' The burden of establishing that the evidence is within the terms of the statute is upon the party asserting the privilege.'' Inasmuch as the witnesses' statements were not, of themselves, privileged, and since the inclusion of them in what may have been a confidential report[19] did not extend any privilege to them, petitioner's claim must fail.

But petitioner contends that the rule of *Holm* v. *Superior Court* (*supra,* 42 Cal.2d 500) demands a contrary conclusion. The *Holm* case, of course, had been decided when the California Legislature enacted the discovery act. But, as pointed out above, the Legislature expressly provided that mere adoption of the act should have no effect on existing judicial decisions interpreting privilege. Examination of *Holm* indicates that it does not support a claim that statements of independent witnesses, gathered for the purpose of trial preparation, are within the extent of the privilege. The *Holm* decision dealt with three specific pieces of material all of which were, as here, included in the report which defendant transmitted to its attorney in confidence. One was a photograph of the scene of the accident taken by defendant's investigators; the second was plaintiff's statement obtained from her by defendant's bus driver; the third was the driver's own report, including his version of the accident, alleged to have been intended as a confidential report to his employer's attorney. The *Holm* decision held that the photograph and the driver's report were privileged, and that the plaintiff's statement was not.[20] In its opinion the court had no occasion

---

[19]It is not necessary to a decision herein that we pass upon the question of the privileged nature of this particular communication as affected by the fact that the attorney-client relationship did not exist at the time that the information was gathered.

[20]The opinion expressly recognized that the driver's statement, containing his version of the accident, would not have been privileged had it been made in the regular course of business as a report to his superiors for the purpose of studying methods of accident prevention or other administrative matters. The *Holm* doctrine thus makes a factual distinction between reports of the participants on the basis of whether they

to discuss the privileged or nonprivileged nature of statements made by independent witnesses who were not parties to the litigation and who had no concern in the outcome. In fact, its language leads to the conclusion that if such statements of independent witnesses had been included in the communication the court would have held them to be discoverable along with plaintiff's statement.

 In this connection, we agree with the holding of *Trade Center Properties, Inc.* v. *Superior Court,* 185 Cal.App. 2d 409 [8 Cal.Rptr. 345]. There the attorney for defendant, in order to prepare himself for trial, took a statement from one Files, an independent witness to the transaction. The opposing party attempted to obtain the statement via deposition of the attorney. Although holding that it was contrary to public policy to allow the deposition of an attorney representing a litigant to be taken by his adversary in a pending action, the court refused to deny the right to discovery on the ground of privilege. In this connection the court, at page 411, stated: ''The contention [that the information was subject to the attorney-client privilege] reveals a gross misunderstanding of that privilege. It extends only to 'any communication made by the client to' his attorney. Files . . . is not a party to the pending action nor the client of defendants' counsel. No conceivable extension of the broadest view of the language of . . . *Holm* v. *Superior Court* . . . can extend the attorney-client privilege to the communications of the independent nonparty witness here involved.''

For these reasons it must be held that the statements here involved were not privileged.

*The ''work product'' rule*:

 Petitioner also argues that its attorney should not be required to disclose the statements of the independent witnesses for the reason that such are the product of its preparation for the defense of probable litigation. This is a claim based on the so-called ''work product doctrine'' an-

are made for the sole purpose of trial preparation. In both the *Holm* case and the instant proceeding there were conflicting contentions as to the original purpose of the report. Ordinarily, such must be deemed to present a factual issue for determination by the trial court.

The basis of the *Holm* determination that the photograph was privileged is not as clear as is the balance of the decision, in light of the fact that the picture was a representation of public highways which any person may have obtained. However, we are not here concerned with that phase of the case.

nounced by the United States Supreme Court in *Hickman* v. *Taylor* (*supra*, 329 U.S. 495).

The *Hickman* case involved an attempt to require the adversary's attorney to disclose (under the federal discovery rules) his written memoranda of impressions received from oral statements and conversations had with independent witnesses who were equally available to both parties. After holding (as we have herein) that the statements made by independent witnesses were not privileged in and of themselves, the court came to the conclusion that the attorney should not be required to make disclosure of his own notes and impressions. It based this determination on the necessity of protecting a lawyer's privacy, and maintaining his freedom from intrusion by the opposing parties during his attempts to assemble information, sift the relevant from the irrelevant, and prepare his legal theories and strategy. ▇▇▇▇ The court carefully added the following warning:

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning." (329 U.S. at p. 511.)[21]

Except for its reference to the federal rules, the quoted

---

[21]The Federal Advisory Committee's solution to the problem was a suggested addition to the rule prohibiting the courts from ordering production or inspection of any material prepared by the litigant or his attorney, as trial preparation, unless denial would unfairly prejudice the party seeking production; and in no event allow disclosure of a writing that reflects the attorney's mental impressions, conclusions, opinions or legal theories. Louisell, in his article entitled *Discovery and Pre-Trial* (36 Min. L. Rev. 633), indicates that the only reason that this suggestion was not adopted into the rules is that the court then had *Hickman* v. *Taylor* under consideration, and adoption of the rule might have proved embarrassing.

paragraph could have been written for the facts and purposes of the instant case. Thus, even under the federal rule it is not correct to say that the work product rule would bar the order entered by the respondent court herein.

The work product doctrine is predicated upon the necessity of so limiting discovery that the stupid or lazy practitioner may not take undue advantage of his adversary's efforts and prepare his case for trial through no efforts of his own. Such tactics should not be permitted. Some limitation is required in order to prevent such unfairness.

In its essence, the "work product rule" is a form of federally created privilege. (See case note, 8 U.C.L.A. L. Rev. 472.) The Legislature expressly refused to extend the concepts of privilege when adopting the discovery procedures. Since privilege is created by statute it should not be extended by judicial fiat. While the *Hickman* case, and any other case from a jurisdiction having a similar discovery statute, may be persuasive, and its reasoning accepted where applicable to California (*Trade Center Properties, Inc.* v. *Superior Court, supra,* 185 Cal.App.2d 409, 411; see also *Grand Lake Drive In* v. *Superior Court, supra,* 179 Cal.App.2d 122, 129, and *City & County of San Francisco* v. *Superior Court, supra,* 161 Cal.App.2d 653, 656-657) such should not be accepted as creating a privilege where none existed. We are therefore inclined to the view that the work product privilege does not exist in this state. This is not to say that discovery may not be denied, in proper cases, when disclosure of the attorney's efforts, opinions, conclusions or theories would be against public policy (as in the *Trade Center* situation, *supra*), or would be eminently unfair or unjust, or would impose an undue burden. The California Legislature has designed safeguards for such situations. The sanctions which protect against the abuse of discovery give the trial court full discretion to limit or deny when the facts indicate that one litigant is attempting to take advantage of the other. Facts which give rise to the work product privilege in other jurisdictions may, in some circumstances, indicate an abusive attempt to "ride free" on the opponent's industry. Such facts are not even hinted at herein, and, if they were, the respondent court has resolved them in favor of discovery. Petitioner has not only failed to convince us that "work product" is equated with privilege in California, it has failed to indicate that the reasons underlying that doctrine would be applicable to this proceeding.

For these many reasons it is quite clear that the trial court was justified in requiring petitioner to disclose the written statements of the independent witnesses.

The alternative writ is discharged and the application for a peremptory writ is denied.

Gibson, C. J., Traynor, J., White, J., and Dooling, J., concurred.

Schauer, J., and McComb, J., concurred in the judgment.

Petitioner's application for a rehearing was denied August 30, 1961. Schauer, J., and McComb, J., were of the opinion that the application should be granted.