[Civ. No. 40471. Second Dist., Div. One. June 15, 1973.]

GERALD ARMSTRONG et al., Plaintiffs and Appellants, v.
KARL E. GATES, Defendant and Respondent.

■

## COUNSEL

Murray C. Lertzman and Peter Andrew Notaras for Plaintiffs and Appellants.

Spray, Gould & Bowers and Daniel O. Howard for Defendant and Respondent.

## OPINION

**LILLIE, J.**—Plaintiffs appeal from order setting aside entry of default and default judgment. On March 9, 1967, plaintiffs filed suit for personal injuries arising out of an automobile accident on March 17, 1966. Both parties were insured with State Farm Mutual Automobile Insurance Company. Because of difficulty in locating defendant he was not served until March 8, 1970; no answer having been filed his default was entered on January 11, 1971, and on October 14, 1971, default judgment was entered against him for $50,177.05. On November 12, 1971, defendant filed notice of motion to set aside and vacate entry of default and default judgment based primarily on the declaration of Robert W. Brehm. Thereafter on November 23, 1971, plaintiffs filed notice of taking Brehm's deposition; on December 1, 1971, defendant filed notice of motion for protective order and on December 10, 1971, motion was granted and order made preventing the taking of said deposition. On January 7, 1972, motion to set aside entry of default and default judgment was granted.

Defendant's declaration in support of motion to set aside default asserted that after service on him of summons and complaint he immediately mailed the papers to State Farm assuming it would take care of the matter; he received no notice of request to enter default and was unaware of default judgment until later in October 1971.

Declaration of Harry Brendlinger, State Farm claim adjuster, alleged that on November 21, 1966, plaintiff's (Mrs. Armstrong) claim and Dr. Weiss's report reflecting injury to her, came to his attention; he took photographs of the vehicles showing almost imperceptible damage to plaintiffs' vehicle; prior to January 14, 1967, he called Murray Lertzman, attorney for plaintiffs, and told him he was in charge of plaintiffs' claims; having received medical authorizations he examined Mrs. Armstrong's records and found she had been under treatment by Dr. Weiss since 1963, then wrote Lertzman on January 18 and February 7, 1968, asking for a break-

down of her medical bills and treatment to determine how much pertained to the accident; on April 5, 1968, he spoke with Lertzman advising him to file a complaint; Lertzman said a complaint had been filed, and he would have defendant served and call Dr. Weiss for a medical breakdown; until July 8, 1968, he twice called Lertzman leaving messages but did not hear from him; in February 1969 he was promoted, and relinquished the file.

The declaration of Robert W. Brehm, senior claim specialist for State Farm, asserted that in February 1969 he received plaintiffs' file; on February 26, 1969, he called Lertzman advising him of his address and telephone number, Lertzman told him he had filed suit against defendant, they agreed Dr. Weiss's failure to provide the breakdown was holding up negotiations and Lertzman said he would let him know when he obtained the breakdown; on May 3, 1971, he received from his superintendent Lertzman's letter dated April 23, 1971, stating he had entered default of defendant and if he did not hear from State Farm he would proceed to enter judgment without further notice; this was the first notification he had of service on defendant and entry of default, and immediately notified State Farm's counsel; on May 14, 1971, he called Lertzman and told him he had received the letter; Lertzman responded, "I realize that, but I will not stick you with the default"; there were no conditions qualifying this statement; he reminded Lertzman that State Farm had never received Dr. Weiss's breakdown which Lertzman admitted he had never been able to obtain; based on Lertzman's assurance he would not "stick" State Farm with the default, he did nothing and believed Lertzman would obtain a breakdown of medical bills and contact him with regard to possible settlement; having heard nothing from Lertzman he wrote him on October 19, 1971, stating the foregoing and asking if there was anything he could do; on October 20, 1971, Lertzman answered that a default judgment had been entered on October 15, 1971.

After the court denied plaintiffs' right to take the deposition of Robert Brehm, Lertzman filed his declaration in opposition to motion to set aside default alleging that he had been unsuccessful in obtaining service on defendant and during the next two years had several conversations with Brendlinger who asked if there was a possibility of settlement; he said since Mrs. Armstrong had not yet made full recovery he was reluctant to enter into a final settlement; thereafter plaintiffs authorized Dr. Weiss to give State Farm copies of medical records; in April 1968, Brendlinger asked for a breakdown but he told him the medical records spoke for themselves although he would see if Dr. Weiss could give a more definitive breakdown; he told Brendlinger he had filed suit and the case number

and was having difficulty serving defendant, and requested an up-to-date address which Brendlinger said he would try to obtain; he never again heard from Brendlinger.

In March 1969, he telephoned Brendlinger's office and found he had been transferred; he spoke to someone about possible settlement and was assured an adjuster would contact him; he telephoned State Farm in July and December 1969 and was told there was a mixup as to who had the file but he would hear from someone; through a private investigator defendant was finally located and served on March 8, 1970; he received no communication from State Farm and having received no answer in August 1970, telephoned State Farm, advised defendant had been served and he would not wait forever before entering default; he was assured he would hear from a representative but he heard nothing, and in December 1970, he called again and was told they could not locate the file; he said he would wait no longer and unless he heard from someone at State Farm before the end of the year he would enter the default; he was assured somone would contact him; hearing nothing he requested entry of default on January 7, 1971; on that date he personally deposited a copy of request for entry of default in the mail to defendant at his current address (the same at which he had been served), and the letter was not returned.

On April 23, 1971, he advised State Farm by letter he had entered defendant's default (copy of this letter is attached to defendant's motion to set aside default): "Mr. Harry Brendlinger of your office was handling this matter, but I have made several telephone calls attempting to learn who has taken over this case after he left your company. Not having heard from your office, I have entered the default of your insured, Karl T. Gates. If I do not hear from you relative to the satisfactory settlement, I shall proceed to enter judgment without further notice to you"; on May 14, 1971, Brehm called and said he was the adjuster and asked would he set aside the default; he said he would not but if they could get together promptly and settle, the entry of default would not jeopardize State Farm; at no time did he say he would do nothing further regarding entry of default, in fact he notified State Farm of the entry of default and there was ample time for them to have filed motion to set aside default under section 473, Code of Civil Procedure; after having received "the run-around" from State Farm, neither he nor his clients were inclined to voluntarily set aside the default; Brehm told him he had not received the file but he told Brehm he would not retreat from his position and he would proceed to have the judgment entered; he would never have agreed otherwise since it would amount to clear malpractice on his part, and he never agreed to do anything other than meet Brehm to determine whether the

matter could be settled; having heard nothing from Brehm, his clients and Dr. Weiss appeared in court on October 1 and he obtained judgment against defendant which was entered October 14, 1971; five days later he received a letter from Brehm dated October 19, 1971; no one from State Farm or defendant contacted him regarding entry of default until after entry of judgment.

The first question presented to us is whether under the facts of this case the trial court abused its discretion in making the order denying plaintiffs' right to take the deposition of Robert W. Brehm. ■ "While the discovery statutes give the trial court wide discretion in making such orders as may be necessary to protect parties and deponents from abuse or misuse of depositions (*Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 378 [15 Cal.Rptr. 90, 364 P.2d 266]; *Carlson* v. *Superior Court, supra,* 56 Cal.2d 431, 437), 'there can be no room for the exercise of such discretion if no ground exists upon which it might operate.' (*Carlson* v. *Superior Court, supra,* p. 438, fn. omitted.) If there is no legal justification for such exercise of discretion it must be held that an abuse occurred. (*Carlson* v. *Superior Court, supra,* p. 438.)" (*Oak Grove School Dist.* v. *City Title Ins. Co.,* 217 Cal.App.2d 678, 712 [32 Cal.Rptr. 288]; *Rosen* v. *Superior Court,* 244 Cal.App.2d 586, 591 [53 Cal.Rptr. 347].) ■ We conclude that the trial court's order was an unwarranted limitation upon plaintiffs' right of discovery. First, defendant failed to make a showing of good cause required under section 2019, Code of Civil Procedure;[1] and second, the ground upon which the order was granted is legally insufficient to support the protective order.

The sole ground of defendant's motion for protective order was "that Judge Laurence J. Rittenband has previously ordered that no deposition should be permitted in this matter prior to a hearing of the defendant's motion to set aside the entry of default and default judgment previously entered. In addition, Judge Rittenband ordered that no oral testimony will be permitted." Defense counsel's declaration asserted that he appeared on plaintiffs' motion for continuance of defendant's motion to set aside default on November 18, 1971, and "In response to my specific inquiries, Judge Laurence J. Rittenband ordered that no oral testimony would be heard and no depositions would be permitted prior to hearing the defendant's motion to set aside the default and default judgment." Neither the

---

[1]Section 2019(b)(1) provides: "Upon motion seasonably made by any party or by the person to be examined . . . and upon notice, or upon the court's own motion and after giving counsel an opportunity to be heard, and in either case for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, . . ."

minute order of November 18, 1971, nor a transcript of the oral proceedings had on that date is in the record before us; thus we do not know whether the judge on November 18, 1971, actually made an "order," as claimed by defendant, or only "remarked from the bench," as urged by plaintiffs, that no depositions would be permitted. However, we do know that at that time there was no issue regarding a deposition before the court because the record shows that on November 18, 1971, no notice to take the deposition of Robert W. Brehm had been filed. The order was made solely in response to an oral inquiry by defendant's counsel on a motion for continuance, and not "upon notice"; or do we know if counsel was given "an opportunity to be heard" or whether the "order" was made for "good cause shown," all as required by statute. We can only surmise that the reason for the "order" of November 18, 1971, was the same as that articulated by the court in its order of December 10, 1971, denying discovery when the issue finally properly came before it on defendant's motion for protective order, which reason *Carlson* v. *Superior Court, supra,* 56 Cal.2d 431 [15 Cal.Rptr. 132, 364 P.2d 308], holds to be not legally sufficient. Thus the only ground advanced on defendant's motion for protective order—that the court had previously "ordered" (Nov. 18, 1971) that no deposition would be taken prior to the hearing on motion to set aside default—can take on no more validity than that vested in the so-called order of November 18, 1971. Inasmuch as section 2019, Code of Civil Procedure, provides that the discretion thus conferred on the court may be exercised only upon a showing of good cause, we must conclude that no showing of good cause was made and that any order based thereon was improper.

However, the court ruled on defendant's motion for protective order denying plaintiffs' right to take Brehm's deposition thusly: "Plaintiff's purpose in seeking to depose Brehem [*sic*] is obviously to obtain information to discredit the statements contained in his declaration. Some of the relevant allegations therein concern negotiations and conversations with plaintiffs' attorney, Mr. Lertzman. These statements may be rejected by affidavits or declarations by Mr. Lertzman, in which event the Court would be enabled to decide between them. There is no need, in almost all cases, to have oral testimony in Court, or by deposition in motion matters as the authorities cited hold. This case is no exception." We note that at the time the foregoing order was made, Mr. Lertzman had not yet filed his declaration in opposition to motion to set aside default and default judgment. We further note that the taking of a deposition does not necessarily result in oral testimony in court, and it is obvious that the taking of Brehm's deposition was for the purpose of assisting Lertzman in interpret-

ing Brehm's declaration, preparing his own declaration and in aiding him in his argument opposing the motion to set aside default.

We have already held that the "boot strap" ground given in defendant's motion for protective order is insufficient to show good cause for suppression of plaintiffs' right to take Brehm's deposition; and we find that the ground of the foregoing order reflected on its face demonstrates a lack of legal justification for the court's exercise of discretion. The very basis of the order was rejected by the Supreme Court in *Carlson* v. *Superior Court, supra,* 56 Cal.2d 431 [15 Cal.Rptr. 132, 364 P.2d 308]. On motion to modify an interlocutory divorce judgment in accord with the terms of an alleged stipulation, notice of taking several depositions was given. Among the grounds stated in the motion to prohibit the taking of the depositions was that "the proposed depositions were unnecessary because all of the contentions of the deponents concerning the issues of fact (validity or invalidity of the stipulation) were set out in the affidavits and declarations filed by the parties; . . ." (P. 438.) Said the court at page 439: "The contention that depositions are unnecessary because the facts sought are all set forth in declarations and affidavits voluntarily filed by the parties is also without merit. This contention misconceives the obvious distinctions between a unilateral affidavit and a bilateral examination. Of course, in an affidavit, the affiant states only those facts that support his contentions, but in a deposition his opponent may inquire into further facts not volunteered by the witness. Obviously, the scope of an affidavit does not cover the same area encompassed by a deposition. As between the two, only deposition affords an opportunity to alter the effect of the opponent's factual claims by obtaining from him any information which would tend to rebut or go to the credibility thereof."

There is no issue here that the deposition may not be taken on a motion to set aside default and default judgment (§ 2016, Code Civ. Proc.) or that the deposition was not for the purpose of inquiring into matters relating to a new factual issue arising on the motion to set aside default—to wit, the circumstances under which the default and default judgment were entered. In *Oak Grove School Dist.* v. *City Title Ins. Co.,* 217 Cal.App.2d 678 [32 Cal.Rptr. 288], the court held that plaintiff was entitled on motion to tax costs to take depositions as a matter of right in the absence of any showing by defendant that this right should be suppressed, citing *Carlson* v. *Superior Court, supra,* 56 Cal.2d 431, 438-440. The importance of Brehm's declaration and the necessity for taking his deposition are demonstrated by the transcript of the oral proceedings had on defendant's motion to set aside default and default judgment and the fact that to make the order granting the motion to set aside default the trial court had to give

credence to the statements in Brehm's declaration and reject as untrue those contained in the declaration of Lertzman. We conclude that plaintiffs suffered prejudice by reason of the denial of the right to take the deposition and that the order setting aside and vacating default and default judgment should be reversed.

The order is reversed.

Wood, P. J., and Thompson, J., concurred.