[Civ. No. 19500.   First Dist., Div. One.   Nov. 30, 1960.]

ROLF HOMES, INC. (a Corporation) et al., Petitioners, v. SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; MURPHY AND HASTINGS (a Partnership) et al., Real Parties in Interest.

Dinkelspiel & Dinkelspiel and Robert E. Burness, Jr., for Petitioners.

No appearance for Respondent.

Sam J. Whiting, Jr., for Real Parties in Interest.

BRAY, P. J.—Petition for writ of mandate to require respondent court to compel real parties in interest (hereinafter referred to as "defendants") to answer questions as to whether or not defendants are insured against the liability alleged in the complaint.

### QUESTION PRESENTED

Are civil engineers, sued for alleged malpractice and fraud, required to disclose whether or not they are insured against such liability?

### RECORD

Defendants are civil engineers transacting business as a partnership. Petitioners sued said defendants, alleging malpractice and fraud of defendants in connection with engineering work and advice supplied petitioners by defendants. Petitioners took the deposition of defendant Murphy. Said de-

fendant refused to answer the questions hereafter set forth. Thereafter petitioners moved the superior court for an order to compel defendant Murphy to answer said questions. The court denied the motion.

### DISCLOSURE OF MALPRACTICE INSURANCE

The first question to which an answer was refused was: "Are you insured against the liability alleged in this complaint?" Then followed questions as to the company and policy limits.

This is the first time the California courts have been called upon to determine whether information concerning malpractice insurance for civil engineers is discoverable on deposition.

In a malpractice action against a physician it has been held that the existence and extent of liability insurance of the defendant is discoverable. (*Laddon* v. *Superior Court* (1959), 167 Cal.App.2d 391 [334 P.2d 638].) The Laddon decision was based upon three prior cases all holding that in actions for personal injuries arising from automobile accidents a plaintiff is entitled to discovery of whether or not a defendant held a public liability insurance policy, and if so, to an examination of the policy. These cases are *Demaree* v. *Superior Court* (1937), 10 Cal.2d 99 [73 P.2d 605], *Superior Ins. Co.* v. *Superior Court* (1951), 37 Cal.2d 749 [235 P.2d 833], and *Malmgren* v. *Southwestern Auto. Ins. Co.* (1927), 201 Cal. 29 [255 P. 512]. These cases held that section 11580 of the Insurance Code, and its predecessor, created a contractual relation which inured to the benefit of any and every person who might be negligently injured by the assured as completely as if such injured person had been specifically named in the policy, and that therefore a person bringing an action in good faith for injuries received by the negligence of the policyholder has a discoverable interest in the policy. *Laddon* then held that as section 11580 requires in all policies a provision for direct action by the injured party against the insurers, after judgment against the insured, resulting from liability for injury suffered by another person, a policy insuring against liability for negligent practice of the healing arts is quite as much within this provision as is a policy insuring against liability for the negligent operation of an automobile. *Laddon* then held that the defendant physician must answer interrogatories asking whether he carried malpractice insurance at the time in issue, and if so, the name and address of the insurer and the policy limits.

In *Pettie* v. *Superior Court* (1960), 178 Cal.App.2d 680 [3 Cal.Rptr. 267], a case dealing with discovery in a personal injury action resulting from the claimed negligent operation of an automobile, the court stated that inquiry as to the existence and policy limits of liability insurance is permitted primarily upon the grounds that section 11580 creates a contractual relation between the insurer under a liability insurance policy and third persons who are negligently injured by the assured, and that a plaintiff in a personal injury action has a discoverable interest in a defendant's liability insurance which arises with the pendency of the action against the assured. *Pettie* further states that while the matter of a liability policy is not within the issues determinable in a personal injury action, nor is information concerning it reasonably calculated to lead to the discovery of admissible evidence, it is "relevant to the subject matter" which is one of the grounds for discovery provided by section 2016, subdivision (b), Code of Civil Procedure. In addition to the contractual theory of the above cases, the court in *Pettie* gives other grounds for discovery of a liability policy. It states (p. 688) : "It being the established public policy in California that the provisions of a liability insurance policy are not a matter for the sole knowledge of the named assured and the insurance carrier to the exclusion of the injured person, it may well follow that the revelation of the liability limits of such insurance policy will tend to promote the efficacious disposition of negligence litigation by settlement or by trial." After pointing out, "The primary purpose of pretrial discovery proceedings is to further the efficient, economical disposition of cases according to right and justice on the merits. The amendatory discovery act is to be liberally construed" (p. 689) the court quotes at some length from *People* ex rel. *Terry* v. *Fisher,* 12 Ill.2d 231 [145 N.E.2d 588, 592, 593], to the effect that without knowledge of whether a defendant is insured a plaintiff with serious injuries might settle a substantial claim against a defendant of modest means, where he would not so settle if he knew that the defendant was insured; that, moreover, "The presence or absence of liability insurance is frequently the controlling factor in determining the manner in which a case is prepared for trial. That there will be actual rather than nominal recovery conditions every aspect of preparation for the trial of these cases—investigators, doctors, photographers and even the taking of depositions. . . .

" ' . . . Inasmuch as the insurance company is virtually

substituted as a party (*Maddox* v. *Grauman*, Ky., 265 S.W.2d 939 [41 A.L.R.2d 964] ; dissent in *Jeppesen* v. *Swanson*, 243 Minn. 547 [68 N.W.2d 649, 658] ), as far as the investigation and conduct of the defense is concerned, it would seem to be relevant, if not indispensable, that plaintiff's attorney have knowledge of the existence of insurance in order to prepare for the case he has to meet and be apprised of his real adversary. . . .' '' (Pp. 689-690.)

In *Pettie* the court finally refers to the statement of Mr. Justice Schauer in *Superior Ins. Co.* v. *Superior Court, supra,* 37 Cal.2d at page 755, where he states that knowledge by a plaintiff that the defendant has a policy with low limits might constitute a benefit to a defendant by tending to discourage a seriously injured plaintiff from holding out for a settlement commensurate with the extent of the injuries.

If defendants are insured against the liability sought in this case, the policy would not be one covered by section 11580. That section provides:

"A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this State unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein.

"(a) Unless it contains such provisions, the following policies of insurance shall not be thus issued or delivered:

"(1) Against loss or damage resulting from liability for injury suffered by another person other than a policy of workmen's compensation insurance.

"(2) Against loss of or damage to property caused by draught animals or any vehicle, and for which the insured is liable.

"(b) Such policy shall not be thus issued or delivered to any person in this State unless it contains all the following provisions: . . .

"(2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

Section 11580, then, applies only to policies where the liability is for personal injuries under (a) (1), and where under (a) (2) the liability is caused by a draught animal or by a

vehicle. The liability sought to be imposed in this action obviously comes within neither subdivision. Therefore, insofar as the reasoning in the above mentioned cases holding liability policies discoverable is based upon the contractual theory established by section 11580, such reasoning would not apply here. However, if, as a fact, defendants do have a liability insurance policy which by its own terms provides, as the policies to which section 11580 are applicable must, that whenever a judgment is secured against the insured on liability covered by the policy, an action may be brought on the policy by the judgment creditor, then the principle of a contractual relationship in *Laddon* and the other cases would apply, and the policy would be discoverable. Therefore, plaintiffs are entitled to learn from defendants if they are insured against liability for malpractice, and, if so, to see the policy to determine whether there is any contractual relationship between plaintiffs and the insurer. Plaintiffs, likewise, are entitled to the information on the other grounds set forth in *Pettie,* as they are equally as applicable in a malpractice action against civil engineers as in one against physicians, or in an action for personal injuries received in an automobile accident.

As pointed out in *Pettie,* section 2016, subdivision (b), Code of Civil Procedure, ''expressly provides that discovery may be had as to *any matter* which is relevant to the *subject matter*'' (p. 688; court's emphasis), and that if the Legislature had intended ''to specify that discovery was to be limited to matters relevant to the issues determinable in the pending action, and as to matters reasonably calculated to lead to the discovery of admissible evidence, the Legislature could have so stated.'' (P. 688.)

In *State* ex rel. *Allen* v. *Second Judicial District Court,* 69 Nev. 196 [245 P.2d 999], the court refused to issue a writ of mandate to compel the trial court to make an order requiring the insured to disclose the existence and policy limits of liability insurance in a prospective personal injury action arising out of an automobile accident. The court considered *Superior Insurance, supra,* but stated that Nevada had no insurance statute comparable to California Insurance Code, section 11580, and that the California rule is based upon a contractual relationship which that statute raised between the insurer and the injured third person. Nevada's statute provides for a bond, or insurance policy in lieu of a bond, *as security* for any judgment for damages, which judgment

must be obtained before resort may be had to the security. The court then pointed out that security for the payment of a claim by the person responsible for the damage is a far different thing from an existent direct contractual obligation for such payment. In the latter case the injured party has an actual interest in the policy of insurance identical with his cause of action against the responsible party. This Nevada case, then, is based strictly upon the ground that the Nevada statute did not make a direct contractual relationship between the insurer and the injured third party. No consideration was given to the question of whether in fact the insurance policy, if there was one, created such relationship. Nor was consideration given to the additional grounds for discovery, which are set forth in the later Pettie case, and which grounds apply whether the protection afforded the insured is of the type required by section 11580 or is merely security as required by the Nevada statute, namely, the effect on possible settlement and the effect on method of preparation for trial of knowledge by a plaintiff of a liability insurance policy (or security) and its limits.

In the federal courts there is a difference of opinion as to discoverability of the existence and limits of insurance, and the weight of authority in other state jurisdictions favors denial of attempts to discover the existence and extent of public liability insurance carried by a defendant. (See *Laddon, supra,* p. 393.) ▆▆▆ However, as pointed out in *Laddon,* page 394, California has adopted the rule that the provisions of the Discovery Act must be liberally construed. Much of the weight that could be given to the cases in other jurisdictions is diminished, since most of those cases base their denial of discovery of insurance on lack of relevancy to issues, which our Discovery Act expressly does not require. McCormick on Evidence, section 168, page 355, calls the concept of relevancy "a rather inadequate foundation."

In *People* ex rel. *Terry* v. *Fisher, supra,* 145 N.E.2d 588, the court intimates that a plaintiff has a right to know at the trial his real adversary who investigates, employs counsel, and conducts the litigation, which in the event of insurance coverages, is the insurance company.

▆▆▆ As stated above, it is relevant, if not indispensable, that plaintiff's attorney have knowledge of the existence of insurance in order to prepare for the case he has to meet, and be apprised of his real adversary. Moreover, " '. . . Such knowledge . . . would also lead to more purposeful discus-

sions of settlement, and thereby effectuate the dispatch of court business. This aspect is most significant in terms of effective judicial administration in coping with today's congested dockets which are largely attributable to the increasing volume of personal injury litigation.' '' (*Pettie*, p. 690.)

It is therefore ordered that a peremptory writ of mandate issue, directed to the respondent court, commanding it to set aside its order denying plaintiffs' motion, and to issue an order directing defendants to answer said interrogatories.

Tobriner, J., and Duniway, J., concurred.