[No. A094534. First Dist., Div. Four. Apr. 23, 2002.]

THE PEOPLE ex rel. CITY OF WILLITS, Plaintiff and Appellant, v. CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B. through II.E.

## COUNSEL

J. Ross Walker, City Attorney; Fognani Guibord Homsy & Roberts, Barbara B. Guibord, Douglas W. Michaud, Elizabeth M. Miller; Howrey Simon Arnold & White, David W. Steuber, Jeffrey M. Jacobberger; Isola & Bowers and Aaron L. Bowers for Plaintiff and Appellant.

Hancock Rothert & Bunshoft, W. Andrew Miller, William J. Baron, Kathryn C. Ashton, Patrick A. Cathcart and Yvette D. Roland for Defendants and Respondents.

## OPINION

**REARDON, J.**—Insurance Code section 11580 (section 11580) requires certain insurance policies to include a provision that allows an action against the insurer after a judgment has been secured against its insured. If this direct action provision is not included in the policy, it is read into the policy.

The People of the State of California and the City of Willits, California, (collectively, the state) brought this action pursuant to section 11580 against Certain Underwriters at Lloyd's of London, and Certain London Market Insurance Companies (collectively, London Insurers). In bringing the action the state was attempting to collect a judgment for property damage caused by environmental contamination. The trial court granted summary judgment in favor of London Insurers after ruling that, in cases involving property damage, section 11580 allows a direct action against an insurer only when the property damage is caused by a vehicle or draught animal.

We conclude the trial court misinterpreted section 11580 and reverse the judgment.

## I. BACKGROUND

The state sued Pneumo Abex Corporation (Pneumo Abex) and Whitman Corporation (Whitman) in federal court for damages for environmental

contamination at and around a manufacturing facility in Willits. The federal court found both Pneumo Abex and Whitman liable for violations of state nuisance law and federal law. After the court made these findings, the parties signed a consent decree that established a trust fund to pay for the cleanup of the affected property. The consent decree further provided for entry of judgment against Pneumo Abex and Whitman in the amount of $9.35 million in order to fund the trust. The decree also contained an injunctive order requiring Pneumo Abex and Whitman to pay additional sums beyond the judgment if demanded by the trust and necessary for the cleanup. The state, however, agreed not to execute on the judgment or on any order for additional sums on the assets of Pneumo Abex or Whitman, except for their rights to proceeds from certain insurance policies.

Six of these insurance policies were excess umbrella policies issued by London Insurers to a Stanray Corporation for policy periods running from December 31, 1966, to January 31, 1973. According to the federal court's findings of fact, Whitman and Pneumo Abex are corporate successors of Stanray Corporation. The policies provided comprehensive coverage for liability for personal injuries and damage to property, after payment of the policy limits of underlying policies. At all times, both before and after the consent decree, London Insurers denied they had an obligation to provide a defense in, or to cover any claims arising from, the federal court litigation.

The state, as judgment creditor, filed this action pursuant to section 11580 to recover the judgment against Pneumo Abex and Whitman from London Insurers. The complaint stated two claims for relief: (1) for execution of the judgment and corresponding declaratory and injunctive relief, and (2) for unreasonable refusal to settle within the policy limits. London Insurers moved for summary judgment or summary adjudication, asserting among other things that the state could not maintain a direct action against London Insurers because the policies were not issued or delivered in California.[1] At the hearing on the motion, however, the trial court raised the issue of whether direct actions under section 11580 were limited to cases involving bodily injury, or property damage caused by an automobile accident.

After receiving additional briefing, the trial court first granted summary adjudication in favor of London Insurers, and then granted summary judgment in favor of London Insurers. The court found the policies did not

---

[1]London Insurers also filed a cross-complaint against several cross-defendants, including Pneumo Abex and Whitman, seeking a declaratory judgment on the existence or absence of insurance coverage for the pollution damage. The question of coverage under London Insurers' policies is not at issue in this appeal.

contain a provision permitting a judgment creditor to file suit against London Insurers, and section 11580 did not require such a provision to be read into the policies. The court concluded that "Section 11580 only encompasses policies covering personal injury or property damage caused by draught animals and vehicles." The court entered judgment against the state on both of its claims.

The state appeals from the final judgment in favor of London Insurers.

## II. DISCUSSION

### A. *Section 11580 Direct Action for Property Damage*

The state contends the trial court erred in ruling that it could not bring a judgment creditor action against London Insurers pursuant to section 11580. We agree.

Section 11580 provides: "A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein. [¶] (a) Unless it contains such provisions, the following policies of insurance shall not be thus issued or delivered: [¶] (1) Against loss or damage resulting from liability for injury suffered by another person other than (i) a policy of workers' compensation insurance, or (ii) a policy issued by a nonadmitted Mexican insurer solely for use in the Republic of Mexico. [¶] (2) Against loss of or damage to property caused by draught animals or any vehicle, and for which the insured is liable, other than a policy which provides insurance in the Republic of Mexico, issued or delivered in this state by a nonadmitted Mexican insurer. [¶] (b) Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions: [¶] . . . [¶] (2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

Subdivision (a) of section 11580 identifies the types of insurance policies that must contain the direct action provision. It is undisputed that London Insurers' policies insured against the kinds of losses described in subdivision (a). The policies insured against liability for loss or damage for both personal injuries and for property damage, including property damage resulting from the use of a vehicle or a draught animal.

As the policies insured against the kind of losses described in subdivision (a) of section 11580, they should have contained the direct action provision set forth in subdivision (b)(2). As they did not, the direct action provision must be read into the policies. That provision allows an injured person who has secured a judgment in an action based upon bodily injury, death, or property damage to bring an action against the insurer on the policy. It is undisputed that the state has obtained a judgment based upon property damage.

In ruling that the state did not have a cause of action under section 11580, the trial court read the language from subdivision (a)(2), regarding a type of policy that must contain a direct action provision, into the direct action provision itself. The trial court took the words "draught animals" or "vehicles" from subdivision (a)(2) and inserted them into subdivision (b)(2). Thus, according to the trial court, only property damage caused by a vehicle or draught animal would support an action against an insurer. But the direct action provision in subdivision (b)(2) refers to judgments for property damage without any restricting language. ▮▮▮ If the policy contains a direct action provision or if one must be read into the policy, any judgment based upon property damage will support an action against an insurer by a judgment creditor.[2]

▮ Contrary to the argument of London Insurers, this interpretation of section 11580 does not render any part of the statute meaningless. The reference to property damage caused by "draught animals" is archaic,[3] but the remaining language of section 11580, subdivision (a) expresses an intent to require a direct action provision in most liability policies issued to California residents. Insurers have responded by inserting the required language (commonly referred to as the "no action" clause) in their general liability policies. (See 4 Cal. Insurance Law & Practice (2001) Liability Insurance, § 41.60[1], pp. 41-118 to 41-119.) As a result, judgments against

---

[2]"Under section 11580 a third party claimant bringing a direct action against an insurer should therefore plead and prove: 1) it obtained a judgment for bodily injury, death, or property damage, 2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal, 3) the liability insurance policy was issued by the defendant insurer, 4) the policy covers the relief awarded in the judgment, 5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal." (*Wright v. Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998, 1015 [14 Cal.Rptr.2d 588].)

[3]Section 11580 was derived from a statute enacted in 1919. (Stats. 1919, ch. 367, § 1, p. 776.)

the insured for bodily injury, death, or property damage may be recovered by filing a second action against the insurer. We see no mischief in this result and we think it was what the Legislature intended. (See *Johnson v. Holmes Tuttle Lincoln-Merc.* (1958) 160 Cal.App.2d 290, 298 [325 P.2d 193] [§ 11580 is a part of every policy and creates a contractual relation that inures to the benefit of any and every person who might be negligently injured by the insured as completely as if such injured person had been specifically named in the policy].)

The trial court cited *Rolf Homes, Inc. v. Superior Court* (1960) 186 Cal.App.2d 876 [9 Cal.Rptr. 142] in its ruling, and London Insurers asserts *Rolf Homes* is "squarely on point." But *Rolf Homes* concerned a discovery dispute in a malpractice and fraud action against a civil engineer. The question presented was stated as follows: "Are civil engineers, sued for alleged malpractice and fraud, required to disclose whether or not they are insured against such liability?" (*Id.* at p. 877.) Section 11580 is mentioned in the *Rolf Homes* opinion only because earlier decisions had relied on the availability of a direct action against an insurer as a reason for allowing discovery of the existence and extent of liability insurance. (*Rolf Homes, supra,* at pp. 878-879.) The opinion notes that the professional malpractice policy at issue was not covered by section 11580 because that section "applies only to policies where the liability is for personal injuries under (a) (1), and where under (a) (2) the liability is caused by a draught animal or by a vehicle." (*Rolf Homes, supra,* at pp. 880-881.)

The decision in *Rolf Homes* lends no support for the trial court's ruling here. The *Rolf Homes* opinion discusses an entirely different issue, and its hypothetical application of section 11580 was made without any reference to the actual terms of the policy or the actual injury suffered.[4]

Even less helpful is *Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500 [42 Cal.Rptr.2d 295], the other decision cited by the trial court and London Insurers. That decision, involving property damage caused by a landslide, merely mentions in a footnote that one of the defendant insurers had argued that no direct action was available because the property damage was not caused by a vehicle or draught animal. (*Id.* at p. 508, fn. 1.) The *Pruyn* court, however, did not have to decide the issue because no one disputed the fact that the policies contained provisions allowing the direct action against the defendant insurers. (*Ibid.*)

We conclude it is not necessary for property damage to be caused by a vehicle or draught animal in order to bring a direct action against an insurer

---

[4]In any event, to the extent *Rolf Homes* interprets section 11580 in this narrow manner, we disagree with the interpretation.

under section 11580. Because we reach this conclusion, it is unnecessary for us to consider the state's alternate arguments that (1) the underlying judgment was based in part on a nuisance claim that represented injury to a person within the meaning of section 11580, subdivision (a)(1), or (2) one of the policies (policy No. CX 0958) incorporated a direct action provision from an underlying policy.

B.-E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. DISPOSITION

The judgment against the state is reversed. The state shall recover its costs on appeal.

Kay, P. J., and Sepulveda, J., concurred.

A petition for a rehearing was denied May 22, 2002, and the nonpublished portion of the opinion was modified.

---

*See footnote, *ante*, page 1125.